IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IRA E. RUPARD III                           :
                                            :           CIVIL ACTION
        v.                                  :
                                            :           NO.  07-3989
MICHAEL J. ASTRUE,                          :
Commissioner of Social Security             :

**SURRICK, J.**                                            **JUNE 16th , 2009**

### MEMORANDUM

Presently before the Court is an action brought by Plaintiff Ira E. Rupard III ("Plaintiff") under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  For the following reasons, we will adopt the Report and Recommendation of United States Magistrate Judge Elizabeth T. Hey and remand the case to the Commissioner for further proceedings consistent with the Report and Recommendation and this Memorandum Opinion.

## I.      BACKGROUND

### A.      Procedural Background

Plaintiff filed for DIB on March 15, 2004, claiming that he was disabled as of January 30, 2001.  (R. 46.)  Plaintiff's insured status expired on September 30, 2001.  (*Id.* at 17.)  After Plaintiff's application was denied on February 25, 2005 (*id.* at 28-31), Plaintiff requested an administrative hearing (*id.* at 32).  A hearing was held on May 24, 2006.  (*Id.* at 216-32.)  On August 3, 2006, the administrative law judge ("ALJ") issued a decision concluding that Plaintiff was not disabled.  (*Id.* at 17-24.)  Plaintiff appealed the decision and submitted additional evidence, including medical records, from Dr. Thomas Whalen, M.D., which the Appeals

Council made a part of the record.  (*Id.* at 8.)  On August 10, 2007, the Appeals Council denied

Plaintiff's request for review.[1]  (*Id.* at 4-6.)

On June 28, 2007, Plaintiff filed a Complaint seeking review of the unfavorable decision.

(Doc. No. 1.)  Plaintiff filed a Brief and Statement of Issues in Support of his Request for Review

(Doc. No. 6) and the Commissioner filed a response in opposition (Doc. No. 9), to which

Plaintiff filed a reply (Doc. No. 10).  On February 13, 2008, pursuant to Local Rule 72.1 and 28

U.S.C. § 636(b), we referred the matter to Magistrate Judge Hey for a Report and

Recommendation.  (Doc. No. 11.)  On August 27, 2008, Magistrate Judge Hey filed a Report and

Recommendation recommending that the case be remanded to the Commissioner for further

proceedings.  (Doc. No. 12.)  The Commissioner filed Objections on September 9, 2008.  (Doc.

No. 13.)  The Commissioner argues that (1) Magistrate Judge Hey based her recommendation for

remand "upon an impermissible re-weighing of the evidence" (*id.* at 2) and (2) Magistrate Judge

Hey's "recommendation that the ALJ further consider the evidence of [Plaintiff's] hand

impairment is not based on objective evidence of an impairment" (*id.* at 5).  Plaintiff filed a

response to the Commissioner's Objections.  (Doc. No. 15.)  The matter is now ripe for review.

    **B.**    **Factual Background**[2]

------

[1] The ALJ's decision thus became the final decision of the Commissioner under 20 C.F.R. § 404.981.

[2] The facts in this case are fully recited in the Report and Recommendation.  We recite only those facts relating to Plaintiff's hand impairment.  However, we note that in addition to Plaintiff's alleged hand impairment, he suffers from osteoarthritis of the left knee as well as depression and drug and alcohol abuse.  (*See* R. 19, Finding 3 ("The claimant has the following severe impairment:  Osteoarthritis of the left knee (20 CFR 404.1520(c)).  He also suffers with non-severe type impairments in the form of depression and drug and alcohol abuse.").)  The ALJ found that Plaintiff's residual functional capacity ("RFC") permits him to

Plaintiff was 38 years old at the time of his alleged onset of disability.  He has a ninth-grade education (R. 104) and a work history of house painting and home improvement (*id.* at 62-63).  In his DIB application, Plaintiff reported having rheumatoid arthritis that limited the use of both of his hands for holding and gripping objects.  (*Id.* at 61-62.)  Rheumatologist John S. Bomalaski, M.D., examined Plaintiff in February 2000 and diagnosed him as having "[b]ilateral hand degenerative arthritis, primarily at the thumb."  (*Id.* at 115.)  Dr. Bomalaski also noted that Plaintiff "does have a positive rheumatoid factor, but does not have active synovitis.  Approximately 5-10% of the population has a positive rheumatoid factor, which are false positive tests."  (*Id.*)  Examination of radiographs taken of Plaintiff's hands on January 26, 2000, showed "[n]o significant radiographic abnormality on either side."  (*Id.* at 99.)  However, Dr. Bomalaski found that these X-rays "demonstrated degenerative arthritis."  (*Id.* at 112.)  Dr.

---

lift and carry at least ten pounds on a frequent basis and about twenty pounds on an occasional basis.  He is capable of standing and or walking for at least six hours in any eight-hour period.  He has no restrictions on his ability to sit for prolonged periods.  He may be occasionally limited in his ability to engage in climbing activity, balancing, stooping, kneeling, crouching, and crawling.  He has no manipulative, visual, communicative, or environmental type limitations.

(*Id.* at 20, Finding 5.)  The ALJ found that because of these limitations, he is unable to perform any past relevant work:

The claimant has past relevant work as a self-employed painter.  This type of work may require lifting and carrying work related supplies, such as a five-gallon paint bucket, weighing in excess of twenty pounds.  Accordingly, the claimant is unable to perform past relevant work.

(*Id.* at 23.)  The ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566)."  (*Id.* at 23, Finding 10.)  On remand, the ALJ should not only consider Plaintiff's hand impairment, the ALJ should consider the hand impairment in combination with Plaintiff's other impairments.

Bomalaski reported in January 2004 that a physical examination of Plaintiff's hands "demonstrates Hand Heberden's and Bouchard's nodes.  There is no active synovitis at the hands."  (*Id.*)

On August 20, 2004, Dr. Bomalaski completed an Arthritis Impairment Questionnaire. (*Id.* at 117-23.)  Dr. Bomalaski reported Plaintiff's diagnosis of hand degenerative arthritis as a permanent problem.  (*Id.* at 117.)  Dr. Bomalaski also reported reduced grip strength in both hands (*id.* at 117), swelling at the hand interphalangeal joints (*id.* at 118), chronic hand pain (*id.* at 118-19 ), and degenerative arthritis in the hands shown in the X-rays from January 26, 2000 (*id.* at 118).  Dr. Bomalaski advised that Plaintiff could occasionally lift and carry five to ten pounds.  (*Id.* at 120.)  The doctor also reported that Plaintiff has "significant limitations in doing repetitive reaching, handling, fingering [and/or] lifting" (*id.* at 122), and that Plaintiff would have moderate limitations during the work day in grasping / turning / twisting objects and in using fingers / hands for fine manipulations (*id.*).  Dr. Bomalaski advised that the symptoms and limitations that he described in the questionnaire began in 1985, but were "most prominent by 2000."  (*Id.* at 123.)

On October 27, 2004, Dr. Thomas Whalen began treating Plaintiff.  (*Id.* at 162.)  Dr. Whalen completed a Rheumatoid Arthritis Impairment Questionnaire on November 5, 2005.  (*Id.* at 162-68.)  Dr. Whalen reported that Plaintiff had 50% reduced grip strength (*id.* at 163), constant pain in his hands (*id.* at 164), and could only occasionally lift and carry five to ten pounds (*id.* at 166).  These symptoms began at least in 2000, but probably as early as 1985, according to Dr. Whalen.  (*Id.* at 168.)  Dr. Whalen's medical records and treatment notes, dated October 27, 2004, through September 6, 2006, reveal diagnoses of arthritis in Plaintiff's hands.

4

(*Id.* at 177-96.)  Dr. Whalen completed a second Rheumatoid Arthritis Impairment Questionnaire on January 24, 2007.  (*Id.* at 204-10.)  The ALJ did not have access to the majority of Dr. Whalen's medical records when making his decision.[3]

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  This Court reviews *de novo* objections to the Magistrate Judge's Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The factual findings of the Commissioner must be accepted as conclusive, however, if they are supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Dobrwolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).  If the conclusion of the ALJ is supported by substantial evidence, this Court may not set aside the Commissioner's decision even if we would have resolved the factual inquiry differently.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *see* 42 U.S.C. § 405(g).

## III.    DISABILITY STANDARD

Title II of the Social Security Act provides for the payment of insurance benefits to

---

[3] We did not take into consideration this additional evidence in making our determination. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001) (reiterating previous holdings that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence").

5

persons who suffer from a disability.  42 U.S.C. § 423(a)(1)(D).  "Disability" is defined as an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  To qualify for disability benefits, therefore, a claimant must establish that he "is

unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months."  *Morales v. Apfel*,

225 F.3d 310, 315-16 (3d Cir. 2000) (internal quotation marks omitted).

Pursuant to 20 C.F.R. § 404.1520(a)(4), when deciding the merits of a disability claim,

the ALJ applies a five-part inquiry to determine whether the claimant is entitled to disability

benefits:

> First, the Commissioner considers whether the claimant is currently engaged in
> substantial gainful activity.  If he is not, then the Commissioner considers in the
> second step whether the claimant has a "severe impairment" that significantly limits
> his physical or mental ability to perform basic work activities.  If the claimant suffers
> a severe impairment, the third inquiry is whether, based on the medical evidence, the
> impairment meets the criteria of an impairment listed in the "listing of impairments,"
> 20 C.F.R. pt. 404, subpt. P, app. 1 (1999), which result in a presumption of disability,
> or whether the claimant retains the capacity to work.  If the impairment does not meet
> the criteria for a listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the impairment, the claimant has the residual functional capacity to
> perform his past work.  If the claimant cannot perform his past work, then the final
> step is to determine whether there is other work in the national economy that the
> claimant can perform.

*Allen v. Barnhart*, 417 F.3d 396, 401 n.2 (3d Cir. 2005) (quoting *Sykes v. Apfel*, 228 F.3d 259,

262-63 (3d Cir. 2000)).

At issue in this case is the second step, which requires the ALJ to evaluate whether the

6

claimant has a medically severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  To be found to be

disabled, "[y]ou must have a severe impairment.  If you do not have any impairment or

combination of impairments which significantly limits your physical or mental ability to do basic

work activities, we will find that you do not have a severe impairment and are, therefore, not

disabled."  20 C.F.R. § 404.1520(c).  Basic work activities include, among other things,

"walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ."  20

C.F.R. § 404.1521(b)(1).  Although the claimant bears the burden of proof, "[t]he burden placed

on an applicant at step two is not an exacting one."  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d

357, 360 (3d Cir. 2004).  "The step-two inquiry is a *de minimis* screening device to dispose of

groundless claims."  *Newell v . Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).  "If the

evidence presented by the claimant presents more than a 'slight abnormality,' the step-two

requirement of 'severe' is met . . . ."  *Id.*

## IV.    DISCUSSION

    The Report and Recommendation addressed several arguments by Plaintiff in opposition

to the ALJ's unfavorable decision.  The Magistrate Judge recommended:  (1) "that the case be

remanded for further consideration of Plaintiff's hand impairment" because Plaintiff presented

sufficient evidence to satisfy the *de minimis* requirement of step two (Doc. No. 12 at 14);

(2) "that, upon remand, the ALJ re-assess and clarify the weight given to the opinions of the

treating physicians regarding Plaintiff's hand impairment" (*id.* at 19); and (3) that the ALJ

consider whether, after reconsidering Plaintiff's hand impairment, the ALJ may still rely on the

Grids or whether a Vocational Expert will be needed (*id.* at 24).

    The Commissioner objects to the Report and Recommendation on two main grounds:

(1) "the Magistrate Judge's recommendation for remand is based upon an impermissible re-weighing of the evidence and not upon the ALJ's failure to consider [Plaintiff's] hand impairment at step two" (Doc. No. 13 at 1-2); and (2) "the Magistrate Judge's recommendation that the ALJ further consider the evidence of [Plaintiff's] hand impairment is not based on objective evidence of an impairment." (*Id.* at 5). The Commissioner argues that the ALJ's decision was supported by substantial evidence and should be affirmed. (*Id.* at 1.)

Plaintiff responds that the ALJ's "scattered references" to Plaintiff's hand impairment "do not rise to the level of a proper step-two determination" (Doc. No. 15 at 4) and that "[a]n ALJ must *explicitly* consider the severity of an impairment when the record fairly raises the issue of that impairment's impact on the claimant's ability to perform basic work activities." (*Id.* (emphasis in original).) Further, Plaintiff details the evidence in the record of his functional limitations resulting from his hand impairment. (*Id.* at 2 & n.1.)

In his decision, the ALJ made the following finding concerning Plaintiff's impairments: "The claimant has the following severe impairment: Osteoarthritis of the left knee (20 CFR 404.1520(c)). He also suffers with non-severe type impairments in the form of depression and drug and alcohol abuse." (R. 19, Finding 3.) Neither the finding nor the explanation that followed made any mention of Plaintiff's alleged hand impairment. As to Plaintiff's Residual Functional Capacity ("RFC"), the ALJ found that Plaintiff has

> the residual functional capacity to lift and carry at least ten pounds on a frequent basis and about twenty pounds on an occasional basis. He is capable of standing and or walking for at least six hours in any eight-hour period. He has no restrictions on his ability to sit for prolonged periods. He may be occasionally limited in his ability to engage in climbing activity, balancing, stooping, kneeling, crouching, and crawling. He has no manipulative, visual, communicative, or environmental type limitations.

(R. 20, Finding 5.)  The ALJ again did not mention Plaintiff's hand impairment.  The ALJ did mention the hand impairment several times throughout the written decision, although not in the context of the step-two inquiry.  (*See* R. 20 (noting Plaintiff's testimony "that he is no longer able to hold anything in his hand"); R. 21 ("[Plaintiff] appeared to have a good grasp on the handle of the cane and leaned heavily on it while ambulating."); *id.* (noting that "[r]adiological examinations of the claimant's bilateral hands and knees were conducted on February 17, 2000 (Exhibit 1-F)"); *id.* (noting that Dr. Bomalaski diagnosed Plaintiff with bilateral hand degenerative arthritis, "primarily at the thumb"); R. 22 (describing the Arthritis Impairment Questionnaire prepared by Dr. Bomalaski which indicated, concerning Plaintiff's hand degenerative arthritis, that "there is no joint deformity but [there is] reduced grip strength," and "that [Plaintiff] is moderately limited in his ability to grasp, turn, and to twist objects with his hands; and his fine manipulations are moderately limited"); *id.* (noting that Dr. Bomalaski's treatment notes "repeatedly state moderate distress with pain in [Plaintiff's] hands").)

After reviewing the entire record, we find that the ALJ's failure to make a finding concerning the severity of Plaintiff's hand impairment requires that the case be remanded for further proceedings.  *See Berrios-Vasquez v. Massanari*, No. 00-2713, 2001 U.S. Dist. LEXIS 11477, at *26 (E.D. Pa. May 10, 2001) (remanding to ALJ for consideration at step two of impairments that "[t]he ALJ failed to even mention . . . , even though there is sufficient evidence in the record to fairly raise the issue of their impact on the Plaintiff's ability to perform basic work activities").  There is no question that the ALJ did not expressly consider Plaintiff's alleged hand impairment at step two.  The ALJ made no finding one way or the other concerning Plaintiff's hand impairment.  This silence cannot be interpreted as a determination that Plaintiff's

hand impairment is not "severe," especially considering the fact that the ALJ expressly

determined that Plaintiff's depression and drug and alcohol abuse are non-severe impairments.

     In her Report and Recommendation, Magistrate Judge Hey stated:  "I conclude that

Plaintiff meets the de minimis standard of step two with regard to his hand impairment."  (Doc.

No. 12 at 12.)  She also observed that "[g]iven the multiple references to Plaintiff's hand

problems in the record – both in the medical evidence and Plaintiff's testimony – it was

incumbent on the ALJ to at least consider his hand impairments at step two."  (*Id*. at 13.)  After

reviewing the record, we understand why Magistrate Judge Hey concluded that the de minimis

standard was met as to the hand impairment.  However, we need not make a determination on the

matter because we agree that it was incumbent upon the ALJ to expressly consider the hand

impairment at step two.  We remand this case because the ALJ failed to make any determination

about Plaintiff's hand impairment at step two.  Based upon the ALJ's failure to expressly

consider evidence of Plaintiff's hand impairment, we cannot conclude that the ALJ's final

determination is supported by substantial evidence.

     We also reject the Commissioner's second objection to the Report and Recommendation.

The Commissioner argues that the Magistrate Judge's recommendation that the ALJ further

consider evidence of Plaintiff's hand impairment is not based on objective evidence of work-

related limitations.  (Doc. No. 13 at 5-7.)  As noted above, contrary to the Commissioner's

assertions, the record does include evidence of functional limitations resulting from Plaintiff's

alleged hand impairment.  It is incumbent upon the ALJ to at least consider the evidence of

Plaintiff's hand impairment and explain his conclusions on the matter.  *See Berrios-Vasquez*,

2001 U.S. Dist. LEXIS 11477, at *18 ("Although the ALJ need not explicitly weigh every item

of medical evidence in the file, he must explain his rejection of competent evidence supporting the Plaintiff's claims." (citing *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001)).

In any event, the ALJ performed his evaluation without the benefit of the additional medical records that were included in the record by the Appeals Council.  On remand, the ALJ should reassess the evidence in light of the entire record, including the additional treatment notes and other medical records submitted after the ALJ's original decision issued.[4]

## V.   CONCLUSION

For these reasons, the Report and Recommendation is approved and adopted, with the exception of the Magistrate Judge's finding that Plaintiff satisfied the second step's de minimis requirement.  The case shall be remanded to the ALJ for further proceedings consistent with this Memorandum Opinion and the Report and Recommendation.

An appropriate Order will follow.

By the Court:

/s/ R. Barclay Surrick
R. Barclay Surrick, J.

---

[4] "When a claimant offers evidence that was not before the ALJ, the Court may remand for further consideration of said evidence when the claimant shows that the evidence is new and material and that there is good cause why it was not presented to the ALJ."  *Isaac v. Astrue*, No. 08-1661, 2009 U.S. LEXIS 44914, at *43 (W.D. Pa. May 28, 2009) (citing *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001)).  Here, we are not remanding for the purpose of having the additional evidence considered by the ALJ and we did not take this additional evidence into consideration when making the decision to remand.  However, since we are remanding the case on an independent basis, it is appropriate that the ALJ consider the entire administrative record, including the additional evidence.